**William F. HAAKINSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15503.**

United States Court of Appeals
Eighth Circuit.

Nov. 29, 1956.

---

Alex M. Miller, Des Moines, Iowa, for appellant.

John C. Stevens, Asst. U. S. Atty., Des Moines, Iowa (Roy L. Stephenson, U. S. Atty., and Robert J. Spayde, Asst. U. S. Atty., Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

JOHNSEN, Circuit Judge.

An officer of a state bank in Iowa was found guilty by a jury of having violated 18 U.S.C.A. § 1010, in its provision that "Whoever, * * * for the purpose of influencing in any way the action of such [Federal Housing] Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, * * * shall be fined not more than $5,000 or imprisoned not more than two years, or both".

He has appealed, contending that the evidence is insufficient to sustain a conviction against him, and that the trial court therefore erred in denying his motion for a judgment of acquittal.

Stated more specifically, the charge of which appellant was convicted, as set forth in the indictment, was that he had submitted to the Federal Housing Administration, for the purpose of influencing its action, and knowing the same to be false, a Federal Housing Administration Title I Loan Report, "certifying that a loan in the amount of $1,-034.92 was made to Roy D. Chesling and Alice M. Chesling for the improvement of property located at 2803 Payne Road,

Des Moines, Iowa, whereas in truth and fact and as said defendants [1] then and there well knew, said Roy D. Chesling and Alice M. Chesling applied the proceeds of said loan to the purchase of an automobile."

The Title I Loan Report constituted part of the papers forwarded by appellant to the Federal Housing Administration, on behalf of the bank, for the purpose of having the Administration insure the Chesling loan, as an eligible one under the FHA statutes and regulations.

The evidence on the trial established undisputedly that the proceeds of the loan were used by Chesling to pay for an automobile, which he had precedingly ordered from a local dealer. The Government further showed, through Chesling's testimony, that he had sought to obtain financing from the dealer, but the latter was not in a position to provide him with more than an 18-months instalment period; [2] that he wanted a term of 36 months in which to make payment for the car; and that the salesman thereupon advised him, after ascertaining that he owned his home, that appellant's bank had a financing plan which might enable him to get the term he needed.

The jury was entitled to find also, on Chesling's testimony, that the incidents which follow had additionally occurred in the situation.

Chesling went to the bank, where he introduced himself to appellant and gave as the reason for his visit that he had been informed by the auto dealer's salesman that the bank had a plan under which his car-purchase balance of $1,694.22 could be financed on a basis that he would be able to handle. Appellant at first replied that the bank had nothing except an 18-months plan for auto financing. Chesling then got up to leave, whereupon appellant remarked, "Well,

wait a minute". Appellant proceeded to make a telephone call, after which he turned to Chesling and said, "We can handle it".

He purported to do some computing and then asked Chesling whether the latter had made any improvements on his house recently or was planning to make any. Chesling replied that he had had a porch put on a short time before and some grading and sodding done. He said nothing, however, about making any future improvements. Appellant then handed him some blank forms to be signed by himself and his wife. Chesling brought back the papers the next day and turned them over to appellant, with only the two signatures written upon them. Some of the papers were Federal Housing Administration forms, of which fact Chesling was aware when he placed his signature upon them, but with which matter, he claimed, he did not otherwise concern himself.

Appellant filled in the blanks upon the forms, inserting a number of statements therein which, according to Chesling, had in no way been the subject of any conversation between him and appellant. Thus, in a form entitled "FHA Title I Credit Application (Property Improvement Loan)", on which he had typed Chesling's home address, appellant inserted, after the printed recital "Proceeds of this loan will be used on above property as described below", and under the printed heading "Improvements planned", the words "Construct Porch $1200.00" and "Landscaping $300.00". In another form, entitled "FHA Title I Cash Down Payment Certificate", appellant put in a statement to the effect that the total cost of the proposed improvements described in the Credit Application form was to be $1,500, and that of this amount there had been or was to be a

---

[1.] The count that is involved had been made to run against appellant and another officer of the bank jointly, but the jury acquitted the other officer of the particular charge. The two officers were, however, jointly charged, in a separate count, with another similar offense, of which the jury found the other officer guilty but on which it disagreed as to appellant's guilt or innocence and so returned no verdict as to him.

[2.] Under regulations promulgated by the Federal Reserve Board credit sales of automobiles could not at that time be made for a period of more than 18 months.

cash down-payment on Chesling's part of $600, leaving a balance to be financed of $900.

Chesling testified that he had given appellant no information as to what the cost of constructing the porch or of having the yard graded and seeded had been; as to how the payment therefor had been handled; or as to any credit or partial payment of any nature having been involved in the undertaking. Under the FHA Regulations, the proceeds of a loan were not entitled to be used to finance alterations, repairs or improvements upon property, which had not been "commenced in reliance upon the credit facilities afforded by Title I of the act." And the substance of Chesling's further testimony was that he had not asked the bank for a loan with which to make or pay for any improvements on his home, but only for a loan with which to finance the purchase of the car that he had ordered, and in an amount sufficient to enable him to take care of the $1,694.22 balance necessary to complete the deal.

Appellant had had Chesling and his wife sign two promissory note forms. One of these appellant filled out, to the order of the bank, in the face amount of $1,034.82, payable in monthly installments over a 36-months period. It was this loan on which he sought insurance from the Federal Housing Administration. The other note form he filled out in the face amount of $956.75, payable over an 18-months period, and had Chesling execute a chattel mortgage on the ordered car as security therefor.

Deductions were made by appellant from the proceeds of the two notes for various charges, and a cashier's check was issued to Chesling on the first note in the sum of $900 and on the second in the sum of $800. One of the deductions made was a $90 premium charge for insurance coverage on the car, which Chesling had requested appellant to provide. Appellant had Chesling endorse the two cashier's checks and opened up a checking account in Chesling's favor, with funds of $1,700 to his credit. Chesling paid the auto dealer with a check for $1,694.53 drawn against these funds.

In the Title I Loan Report, by which appellant submitted the $1,034.82 note for FHA insurance, he declared that the loan was one that had been made "for the repair, alteration or improvement" of Chesling's residence property.

Appellant testified in direct contradiction of part of Chesling's testimony. He claimed that Chesling had sought two loans from the bank—one an automobile-purchase loan of $800 in net proceeds, and the other an FHA loan of $900 in net proceeds, with which to build a garage. (In the Credit Application form, as previously noted, appellant had inserted, under the heading "Improvements planned", the words "Construct Porch $1200.00" and "Landscaping $300.-00".) The effect of appellant's testimony was to deny that Chesling ever had requested a $1,694.22 auto loan; to deny that Chesling had stated, when he came to the bank, that he understood that the bank had a financing plan under which he could obtain more than 18 months time in which to pay for the car that he had ordered; to deny that Chesling ever had informed him that he had been referred to the bank by the salesman of the auto dealer; and to deny that Chesling had gotten up to leave the bank and that he had halted him and said "wait a minute", or that he had made a telephone call and then indicated to Chesling that the bank would handle such a loan as Chesling testified that he had sought. Appellant further claimed in his testimony that all of the blanks in the forms signed by Chesling had been duly filled out before Chesling's execution of the papers; that he only put in the forms such information as Chesling had given him; that he had no other information or knowledge in the situation at the time the loans were made; and that he had accepted, believed and relied upon this information in making out and submitting the Title I Loan Report for the purpose of having the Federal Housing Administration insure the $1,034.82 note.

In this situation of directly conflicting testimony as to the circumstances and incidents of the making of the loan, the jury's task of arriving at the realities and understanding which had existed in the transaction was primarily a matter of resolving credibility as between Chesling and appellant. Belief of Chesling's story, as against that of appellant, provided a direct or testimonial basis for the jury to infer and find that appellant knew that Chesling was seeking and was going to use the loan for the purpose of paying for the automobile which he had ordered; that Chesling had not represented to appellant or in any other way given him cause to believe that the proceeds would be used to make or pay for improvements upon Chesling's home; that the plan of making two loans, instead of one, with the net proceeds thereof corresponding to the amount needed by Chesling to complete his auto purchase, was a scheme on the part of appellant to provide Chesling with the 36-months credit term which he desired for this purpose, disguise the fact of how the funds were to be used, and leave the bank in a position to seek insurance for the $1,034.82 part of the loan from the Federal Housing Administration;[3] that appellant thus knew, when he made out the Title I Loan Report and submitted it to the Federal Housing Administration that the statement therein that the loan had been made "for the repair, alteration or improvement" of Chesling's home was false; that appellant inserted the statement in the Title I Loan Report and submitted the Report to the Federal Housing Administration for the purpose of influencing it to insure the loan; and that appellant accordingly was guilty of the offense charged in the count of the indictment that is here involved.

As to Chesling's role in what had thus been done and the possible significance thereof in relation to his testimony, the court took the precaution of giving the jury a general instruction as to its right to regard any witness for the Government as an accomplice, if he had knowingly, intentionally and wilfully participated with an accused in causng or procuring a charged offense to be committed. or had intentionally and wilfully aided, abetted, assisted or counseled the commission of such offense, and as to the jury's duty to receive with caution and weigh and scrutinize with care the testimony of any such witness in respect to the facts of the alleged situation.

 On all of this, we are unable to see any room for appellant to contend that the evidence is insufficient to sustain the conviction returned against him. Chesling's testimony was ample, if believed by the jury, as it apparently was, to entitle the jury to find that the loan involved had been knowingly made by appellant to enable Chesling to purchase a car and not to construct or pay for improvements upon his home; that in stating the contrary to the Federal Housing Administration in the Title I Loan Report appellant had engaged in making a statement, known by him to be false, and for the purpose of influencing the Administration's action in granting insurance to the bank upon the loan; and that he thus had violated the statute.

 Even if the jury may have regarded Chesling as an accomplice, that fact would not be of any help to appellant on this appeal, for the testimony of an accomplice, though uncorroborated, can legally constitute a sufficient basis for a conviction, if it is not otherwise incredible or unsubstantial on its face. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442; Harrington v. United States, 8 Cir., 267 F. 97, 103; Greenberg v. United States, 8 Cir., 297 F. 45, 47; Webb v. United States, 8 Cir., 8 F.2d 145, 146; Rossi v. United States, 8 Cir., 9 F.2d 362, 366; Johns v. United States, 10 Cir., 227 F.2d 374, 375; McClanahan v. United States, 5 Cir., 230 F. 2d 919, 922.

As a matter of fact, there were circumstances and incidents existing in the

---

3. Actually, Chesling paid both of the notes, as they matured, so that neither the bank nor the Federal Housing Administration sustained any loss from the transaction.

present situation, which we think the jury properly could regard as tending to corroborate elements of Chesling's story. Thus, appellant naturally could be regarded as having known that at least the chatteled loan which the bank was making to Chesling was for the purchase of a car, on the basis of the fact that Chesling had no bill of sale, certificate of title, or registration certificate, from which it was possible for appellant to obtain the information inserted by him in the automobile mortgage which the bank took. The only thing indicated by the printed record that Chesling had was an order slip, bearing the dealer's name, describing the car, and showing that there was to be paid by Chesling as "Cash on Delivery" the sum of $1,694.22. Also, the jury would be entitled to view it as not being without implication that the net proceeds of the two loans made to Chesling aggregated the purchase-price balance (within approximately $5) which was set out on the face of the order slip. Again, the jury might find significance in the fact that, on the basis of appellant's own testimony, he did not claim to have engaged in any other checking with the dealer regarding Chesling's purchase, as the jury could properly believe would normally be done in such a situation.

All of this could, in its coincidence, legitimately be viewed by the jury, it seems to us, as pointing to an apparent understanding or relationship of some nature between the bank and the auto dealer in the handling of an auto loan in a situation like Chesling's, such as the Government claimed had underlain the deal, and as lending credence to that part of Chesling's testimony, at least, of how he had been directed to the bank at the auto dealer's establishment, of what his reason for going there had been, and of the probability that he had in the circumstances, as he claimed to have done, told appellant these facts in his appearance and introduction of himself at the bank, where he had never previously done any business.

There are other elements of similar circumstantial corroboration in the rec-ord; but there is no need to detail these here, for, as we have said, Chesling's testimony constituted in any event substantial evidence in the situation, sufficient to entitle the jury to find against appellant upon the facts of his guilty knowledge, understanding and purpose in making the loan here involved.

Appellant attempts to argue, however, that even if the evidence might be sufficient to establish a violation generally under the provisions of 18 U.S.C.A. § 1010, it was not sufficient to sustain the particular charge made against him in the indictment count, since this charge was, not that he knew in submitting the Title I Loan Report that the proceeds were going to be used to purchase an automobile, but that he "then and there well knew said Roy D. Chesling and Alice M. Chesling [had] applied the proceeds of said loan to the purchase of an automobile".

The evidence showed that the loan was made and the proceeds placed in the checking account, which appellant opened for Chesling, on August 31st; that the Title I Loan Report was drawn up and transmitted by appellant to the Federal Housing Administration on that date; that Chesling did not issue a check to the auto dealer until September 1st; and that this check was not paid by the bank until September 7th. Appellant says that on these facts it was legally impossible for him to have had knowledge on August 31st that Chesling "applied the proceeds of said loan to the purchase of an automobile", since no such application of the funds had at that time occurred.

■■ We can see no legal substance in this technical contention. Under Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A., "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded". The essence of the offense, under the provision of 18 U.S.C.A. § 1010 that is here involved, is the making, passing, uttering or publishing of any statement, knowing the same to be false, and with this being done for the purpose of influencing in any way the action of the

Federal Housing Administration. Reass v. United States, 4 Cir., 99 F.2d 752; United States v. Uram, 2 Cir., 148 F.2d 187; C. I. T. Corporation v. United States, 9 Cir., 150 F.2d 85; Cohen v. United States, 6 Cir., 178 F.2d 588; Ross v. United States, 6 Cir., 197 F.2d 660.

The false statement charged in the indictment to have been made in the Title I Loan Report was that the Chesling loan had been made "for the improvement of property", consisting of Chesling's home, when it had not in fact been made for that purpose but to enable Chesling to purchase an automobile. How appellant knew that his statement was false was not under the statute a matter for substantive charge but merely a matter for evidential establishment. Allegation as to the form or basis of his knowledge thus ordinarily would amount in the situation to legal surplusage. It could not be claimed to represent critical description or particularity in the indictment—at any rate not without a showing that appellant had been prejudicially misled thereby.

Marteney v. United States, 10 Cir., 216 F.2d 760, 763, on which appellant relies, is without any application to the situation. In that case, the indictment charged a violation of 18 U.S.C.A. § 2314—knowingly transporting in commerce " 'falsely made, forged, altered, or counterfeited securities' "—but went on to indicate that the securities involved were regular warehouse receipts, except that they had been issued by the warehouseman without his having in storage the grain which they purported to cover. The court held that this recitation amounted in the circumstances to critical description as to the charge involved because, "upon the face of the charges, the warehouse receipts were actually what they purported to be" and, since "neither of them are false or forged in their execution" they could not constitute securities that were within the ban of the statute, and therefore they left the situation with no possibility of the crime having

been committed and the indictment with "no offense * * * stated".

The situation in the present case could at most be claimed, we think, to have been one of variation between the form or basis of appellant's knowledge of falsity, as stated in the indictment and as proved by the evidence. As we have said above, the allegation constituted generally mere surplusage in the indictment. But if it could be contended to have a greater significance in the particular situation, it still represented merely an allegation of fact as to which variance between the indictment and the proof would not be fatal, unless defendant was misled thereby at the trial or unless the variance was capable of depriving him of protection against another prosecution for the same offense. Berger v. United States, 295 U.S. 78, 82–84, 55 S.Ct. 629, 79 L.Ed. 1314; Mathews v. United States, 8 Cir., 15 F.2d 139, 142–143. Neither of these effects is claimed by appellant in his brief or argument.

Appellant's reply brief asserts—although the point is not directly urged in his original brief as a basis for reversal—that he did not have the opportunity for a fair trial, because of the joinder made in the indictment of 22 separate counts and of 6 other defendants. The trial court had denied his motion for a separate trial.

Included in the 22 counts of the indictment was a charge against the defendants generally of a conspiracy to violate 18 U.S.C.A. § 1010. The numerous overt acts set out as to the conspiracy were made the subject also of separate substantive counts against the individual defendants, as such an act had application to particular ones of them. In the situation covered by the indictment, there were involved approximately a dozen other FHA loans made by the bank, where the dealer from whom Chesling purchased his car was similarly making automobile sales to these borrowers.[4]

The jury convicted only the bank itself and the auto dealer upon the conspiracy

4. The borrowers were not charged or prosecuted.

charge. As to the substantive counts, three had previously been dismissed on motion of the Government, and another was dismissed by the court at the close of the Government's case. On some of the remaining counts, the jury disagreed as to the guilt of a particular defendant, and on others it returned a verdict of not guilty as to an individual defendant. But each of the defendants substantively charged, except one, was found guilty on at least one indictment count.

Appellant urges upon us the admonition in Mr. Justice Rutledge's opinion in Kotteakos v. United States, 328 U.S. 750, 775, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557, that a defendant has "the right not to be tried *en masse* for the conglomeration of distinct and separate offenses committed by others * * *". But this statement cannot be read as a rule or principle. The opinion recognizes that the rule in a situation of jonder of offenses and parties is generally that reflected by Berger v. United States, supra, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. The Court merely held, we think, that such a special situation of joinder of offenses and parties may exist as to be entitled to be treated as an exception to the rule, under the test of whether the court feels that the opportunity for a fair trial has probably not existed. The Court viewed the Kotteakos case, "as shown by this record", as having presented such a situation.

The present case does not impress us as being a situation that is outside the rule of the Berger case. A reading of the record creates no feeling that the jury may have been confused or misled or otherwise improperly affected in what it did, by the number of counts or the number of defendants, or by the evidence offered in relation thereto. Nor do we believe that appellant was under any undue handicap in the matter of his own proof. Indeed, on the nature of the charges, the parties involved, the proof adduced, and the result reached by the jury, we have an affirmative impression and conviction to the contrary. The sifting in which the jury must have engaged,

in its conviction of appellant upon only a single count, seems to us to indicate a painstaking, intelligent and unconfused search and consideration of the evidence relating to all of the separate charges involved. It is not often that we see a record which manifests such a meticulousness by a jury, in the matters of conviction, acquittal and disagreement at which it arrived, as is here before us.

We are satisfied that appellant has had a fair trial, that the proceedings are free from prejudicial error, and that his conviction rests upon proper and ample evidence.

Affirmed.