**UNITED STATES of America,**
**Appellee,**

v.

**Albert OBERMAN, Appellant**
**(two cases).**

**Nos. 8808, 8809.**

United States Court of Appeals
Fourth Circuit.

Argued March 26, 1963.

Decided June 4, 1963.

Joseph J. Lyman, Washington, D. C. (Solomon Levine, Charlotte, N. C., on brief), for appellant.

William Medford, U. S. Atty., for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Chief Judge.

These appeals are from convictions for a series of violations of 18 U.S.C.A. § 1010. This statute makes it a criminal offense knowingly to make a false statement to obtain a loan that is to be offered for insurance by the Federal Housing Administration.[1] The several offenses are set forth in one indictment containing four counts and in another containing a single count. The offenses charged followed a similar pattern. The basic facts are not in dispute, only their legal effect.

The appellant was engaged in selling aluminum siding to be applied to houses. Customers frequently resisted his sales efforts because they lacked the necessary funds to purchase his merchandise and were already in debt. His practice, in the instances mentioned in the indictments, was to persuade these persons that, by undertaking the loans he recommended, they would be enabled not only to pay for the siding but to come into possession of enough additional cash to retire their existing debts. Moreover, he explained to them, the single payment they would then have to make each month on the new loan would be less than the payments they were presently required to make.

1. "§ 1010.   Federal Housing Administration transactions
"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance or cred-

it, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

He entered into written contracts with these customers in which the true amount payable for the siding was overstated by the amount of other debts to be retired with a portion of the proceeds of the loan he was to arrange. The appellant assisted his customers in filling out Federal Housing Administration application forms for loans. He handled the transactions for these customers, taking their signed applications and notes to the lending institution. This he did with the knowledge and expectation that the lender would in turn tender the loan to the Federal Housing Administration for insurance. The bank's checks, made payable to the borrowers, were delivered to Oberman, who brought them to the borrowers for endorsement. The proceeds were then used, in accordance with the prearranged plan, not only to pay the appellant the sums due for the aluminum siding to improve the borrowers' homes, but also to liquidate their debts to others.

The several counts charged specifically that Oberman, "for the purpose of obtaining a loan from the First National Bank of North Carolina at Charlotte, North Carolina, with the intent that such loan should be offered to and accepted by the Federal Housing Administration for insurance, did utter, pass and publish a Federal Housing Administration Title I Credit Application and a promissory note * * * knowing the same to be false and fraudulent, for that there was included in the sum set out in said application and note * * *" a sum which Oberman "knew was not intended to be used for the purpose represented in said application, namely: home improvements, but was intended to be used" in some instances to pay off the balance of loans on automobiles, in others to pay back taxes and other debts.

The single-count indictment differs somewhat from the four counts in the other indictment, in that in this instance Oberman was not even the seller of any merchandise nor was he to install any merchandise. Oberman suggested that he would take care of the loan arrangements, although he knew that the borrower would use the money to pay off an existing second mortgage due another contractor for past work and to meet certain medical bills.

There is no denial that at least part of each of the loans in question was diverted from the purpose represented, namely, home improvements, and applied to other uses by the borrowers with the knowledge of the defendant, who, as we have seen, actively arranged the loans and the preparation of all the papers. Oberman, in fact, theretofore had dealings with the FHA, and because he had committed violations of its regulations he was put on a "Precautionary List." In each of the transactions here under inquiry he used an alias both in dealing with the customers and with the bank. There is no point therefore in the defendant's insistence that the loans were "direct" loans to the customers, rather than to the contractor undertaking to make the improvements. Nor could there be, in the admitted circumstances, a serious contention that the defendant, who fathered and furthered the schemes, did not cause the applications and the accompanying notes to be executed by the borrowers with the intent that at least a portion of the loan proceeds should be used for other than home improvements.

The argument, however, is that neither the credit applications nor the accompanying promissory notes contained any false statement. The defendant would have us look merely at one part of the application and give controlling weight to the fact that the space calling for a description of the improvements planned had not been filled in. The caption above that space reads, "Proceeds of this loan will be used to improve the above-described property as follows:—." The defendant's submission is that inasmuch as the details of the improvements planned were not furnished, he is guilty of no misrepresentation. This omission, however, is unimportant, for at the top of the application form are the words "Credit Application for Property Improvements Loan." Immediately following this caption is the statement: "This

application is submitted to obtain credit under the terms of Title I of the National Housing Act." The application leaves no room for any inference that the proceeds were to be used for any other purpose.

If a truthful answer had been given in the space left blank, it would have refuted the false opening declaration that the loan was for home improvements. No honest answer could have been written in without exposing the ineligibility of the loan for FHA insurance and invalidating the application. The inevitable effect of the omission was to leave unimpeached and unqualified the dominant false declaration at the beginning of the document which called itself a loan application for home improvements. There was falsity in that initial declaration, and there was deception in failing to supply the requested details. Looking at the applications as a whole, therefore, we have first avowals of falsehood and then suppression of the truth.

We must reject the contention that the applications themselves, as prepared by the appellant, fail to show violations of the statute.

The appellant advances the further argument that reversible error was committed in the admission of the contracts for the delivery and installation of siding.

The defendant argues elaborately that there was a variance—that he was improperly convicted for making false statements in the contracts while the indictments were for making false statements in credit applications and promissory notes. The argument must fail, for it rests upon two false assumptions: first that no misrepresentations were made in the applications themselves, and second that the contracts accompanying the applications and notes are to be disregarded as part of the loan papers containing false representations. As we have seen, the loan applications themselves contained misrepresentations; but even if no misrepresentations had been found on the face of these papers, the convictions

would still stand for the admittedly fraudulent contracts were properly before the court.

■ These contracts were prepared simultaneously with the applications and the promissory notes. The contracts and the matching applications and notes were designed for delivery together to the lending bank and for redelivery by the bank to the FHA for the purpose of effecting insurance of the loans. Each set of matching documents arose as a part of a unitary transaction. No error was committed, therefore, in admitting the contracts in evidence, for several writings made as part of the same transaction should be interpreted together. Cf., e. g., Joy v. St. Louis, 138 U.S. 1, 38, 11 S.Ct. 243, 34 L.Ed. 843 (1891); Lewis v. Nunn, 180 N.C. 159, 164, 104 S.E. 470, 473 (1920); Smith v. Smith, 249 N.C. 669, 675, 107 S.E.2d 530, 534 (1959); 3 Corbin on Contracts § 549 nn. 28–29 (1951); 4 Williston on Contracts § 628 n. 6 (3d ed. Jaeger 1961).

■ Apart from this legal principle, another approach is possible here. In each instance the contract, like the application form and the note, misrepresented the cost of the home improvements. Not more than a part of each loan was intended for the declared purpose, and the rest was for purposes not allowable under the FHA regulations. By exposing the fraudulent nature of the contracts, the fraudulency of the notes and applications was also demonstrated. Moreover, it cannot be said that there was a variance between the offense charged and the offense proved; at most the offense charged was proved in part by documents not mentioned in the indictments. Nor can it be said that, in any meaningful sense, Oberman was prejudicially misled, surprised or injured thereby. See Rule 52 (a), Fed.R.Crim.P.; Haakinson v. United States, 238 F.2d 775, 781 (8th Cir. 1956); Brilliant v. United States, 297 F.2d 385, 390 (8th Cir.), cert. denied, 369 U.S. 871, 82 S.Ct. 1140, 8 L.Ed.2d 275 (1962).

The verdict is well supported; indeed, upon the uncontested facts, the conclusion of the Judge, who sat without a jury, seems inescapable. The judgment of the District Court will be

Affirmed.