**Andrew Stratton BASS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 17205.

United States Court of Appeals
Eighth Circuit.

Nov. 1, 1963.

Wils Davis of Davis & Davis, Memphis, Tenn., Douglas Bradley, Jonesboro, Ark., on the brief, for appellant.

Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark., James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., on the brief, for appellee.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and MICKELSON, District Judge.

BLACKMUN, Circuit Judge.

Andrew Stratton Bass was convicted by a jury on four counts of a six-count indictment charging him, as a principal under 18 U.S.C. § 2, with violations of 18 U.S.C. § 1952. The latter,[1] P.L. 87–228, 75 Stat. 498, approved September 13, 1961, is one of the recently enacted inter-

1. "Whoever travels in interstate or foreign commerce * * * with intent to—
* * *
"(3) * * * promote, manage, establish, carry on, or facilitate the pro-

motion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall

state racketeering statutes.[2] Bass received a general sentence of three years and a $5,000 fine. He appeals.

Each of the six counts charged the defendant with inducing and procuring, in 1961 or 1962, a different person to travel in interstate commerce from Memphis, Tennessee, to West Memphis, Arkansas, with intent to promote, manage, and carry on an unlawful activity, namely, "a business enterprise involving gambling offenses in violation of Sections 41–2001, 41–2003 and 41–2004 of Arkansas Statutes Annotated", and the named person's subsequent performance of such acts. At the conclusion of the government's case the defense rested without the presentation of evidence on its part. At that point its motions for judgment of acquittal were granted as to counts 2 and 4 but were denied as to the other counts.

It is in effect conceded here that the operation of a gambling house in Arkansas or having a financial interest in one constitutes an offense violative of the state statutes cited in the indictment. Sorrentino v. State, 215 Ark. 216, 214 S.W.2d 517 (1948); Pope v. State, 216 Ark. 314, 219 S.W.2d 940 (1949). There is no denial, either, that Bass operated and had a financial interest in gambling houses in West Memphis. This federal indictment, of course, did not charge Bass with a violation of the state statutes. Neither did it charge him with traveling personally in interstate commerce to carry on these activities; it charged him only as a principal in the inducement of the persons named to make the proscribed interstate movement.

There is no real question as to certain other facts: Bass, a Negro, lived in Memphis. He operated the Beebop Hall and the Jones Hotel in West Memphis.

These were next door to each other. Dice games were carried on there. The patrons were Negroes. The places were two of several similar establishments in the community. Each game was run by at least two persons. One of these was the "rackman". He handled the money, made change for the players, obtained a cut from each bet, and turned the cuts over to Bass. The other was the "handler", "hustler", or "scuffler". He cut each bet and passed the cut on to the rackman for delivery to Bass. Each rackman and handler was allowed to participate in the gambling on his own and to pick up "sleepers" which were bets inadvertently left on the table by players.

The men named in the remaining four counts of the indictment were Cartrell Williams, Lindsey Culbert Johnson, Julius Grant Fowler and Fred Coleman. Each of the four lived in Memphis. Bass knew they lived there. Each participated in the gambling at the Beebop or the Jones. Each traveled from Memphis to West Memphis to do this.

Williams had worked for six or seven years as a rackman and for about thirteen years before that as a handler. He went over to West Memphis two nights a week on weekends. Bass furnished the money he needed to make change. His compensation consisted of the profit he made from his own betting but if he made no profit Bass paid him something. Johnson worked at the Beebop for three or four years as a handler and rackman. He was compensated in the same way. Coleman was a rackman at the Jones. He received his compensation from his gambling and from sleepers. Fowler was a handler at the Jones. He also asked for and received money from winners.

As the defense points out, there was no direct evidence, in the form of posi-

be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling * * * offenses in violation of the laws of the State in which they are committed * * *."

2. The purpose of the statute is apparent from the Committee Reports. See U.S. Code Congressional and Administrative News, 87th Congress, First Session, 1961, Volume 2, pp. 2664–2667.

tive testimony or concession, that any of the four men traveled in interstate commerce with intent to carry on Bass' gambling business in Arkansas and there was no direct evidence that Bass aided or abetted or caused or induced them so to travel or that he sought them out and procured them to work for him. As a consequence, the defense position basically is that the evidence merely shows that each of the four on his own volition went from Memphis to West Memphis to gamble; that because of the advantage of being a rackman or handler he asked Bass, after he arrived in West Memphis, if he could perform that function; that the four were thus privately motivated to cross the state line; that the record does not support the charge under §§ 1952 and 2; and that the jury never considered the real issues but "simply condemned gambling among the Negroes in West Memphis". Specifically, the defendant asserts that the court erred (a) in refusing to include in its instructions the title of § 1952; (b) in denying the motions for judgment of acquittal as to the four remaining counts; (c) in failing to give requested instructions; (d) in permitting the introduction of certain testimony; and (e) in not holding § 1952 unconstitutional.

■ 1. We see no error in the court's failure to include the title or heading of § 1952 in its charge to the jury. That title is "Interstate and foreign travel or transportation in aid of racketeering enterprises." This court has said, with respect to another but comparable statute that "in the case of a crime of such few and simple elements" it is not even necessary that the statute itself be read to the jury so long as the court states "all the elements necessary to a finding of guilty". Costello v. United States, 255 F.2d 389, 397 (8 Cir., 1958), cert. denied 358 U.S. 830, 79 S.Ct. 51, 3 L.Ed.2d 69. See Holland v. United States, 209 F.2d 516, 522 (10 Cir. 1954), affirmed 348 U.S. 121, 141, 75 S.Ct. 127, 99 L.Ed. 150. We have reviewed the court's entire charge. It carefully defined the elements of the offense and read the pertinent parts of the statute itself. This certainly constitutes everything, and perhaps more, than is required. After all, " * * * headings and titles are not meant to take the place of the detailed provisions of the text. * * * (T)he title of a statute and the heading of a section cannot limit the plain meaning of the text * * *. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt." Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 528–529, 67 S.Ct. 1387, 1391–1392, 91 L.Ed. 1646 (1947).

■ 2. The point as to the refusal to grant the motions for judgment of acquittal is naturally directed to the sufficiency of the evidence. We are not persuaded. There is evidence that Bass was in the gambling business in West Memphis and had been for over twenty years; that on the dates alleged in the four counts the named individuals racked and handled for him at the Beebop or the Jones; that they lived in Memphis; that Bass knew they lived there; that they traveled interstate from their homes to the gambling establishments on the Arkansas side; and that they received either a wage or a preferred place at the dice tables from which they profited. There is some testimony in the nature of "I would be over there". But upon all the general and uncontradicted evidence it was both logical and permissible for the jury to infer that this relationship with Bass and his West Memphis operations was the inducement for the interstate travel; that he thus aided and abetted the four in that travel and in their carrying on of illicit gambling in Arkansas and caused them to perform it; that when they crossed the state line they had the requisite intent to engage in the illegal activity; that their status with Bass as rackmen and handlers occasioned that intent; and that Bass actually furnished the four with employment and thus induced their interstate movement. This evidence was sufficient to support the jury's verdict. Compare United

States v. Zambito, 315 F.2d 266, 268 (4 Cir. 1963), cert. denied 373 U.S. 924, 83 S.Ct. 1524, 9 L.Ed.2d 423, and Blumenfield v. United States, 284 F.2d 46, 53 (8 Cir. 1960), cert. denied 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed. 692.

3. We find no merit in the assertion of error in the denial of three instructions requested by the defense. The content of the first was fully and adequately covered by the court's own instructions. The other two relate to the testimony of accomplices. Here the accomplices would be the men named in the indictment. Each was called as a witness for the government. Their status as rackmen or handlers for Bass was evident from their testimony. The requested instructions asserted, respectively, that "testimony of an accomplice should be considered with caution, and weighed with great care" and must be believed "beyond a reasonable doubt and to a moral certainty", that "their testimony alone must establish the guilt", and "that a person cannot be convicted on the uncorroborated testimony of an accomplice". Apart from the obvious inconsistency, this is not a correct statement of the law. It is true that the Supreme Court has stated that it is "the better practice for courts to caution juries against too much reliance upon the testimony of accomplices and to require corroborating testimony before giving credence to such evidence." Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917), citing Holmgren v. United States, 217 U.S. 509, 523–524, 30 S.Ct. 588, 54 L.Ed. 861 (1910). But it also held in that federal case that "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them". See also Mr. Justice Jackson's comments in his concurring opinion in Krulewitch v. United States, 336 U.S. 440, 454, 69 S.Ct. 716, 93 L.Ed. 790 (1949). This court has recognized this principle where the accomplice's testimony is not incredible or unsubstantial on its face. Haakinson v. United States, 238 F.2d 775, 779 (8 Cir. 1956); Burger v. United States, 262 F.2d 946, 954 (8 Cir. 1959), cert. denied 359 U.S. 990, 79 S.Ct. 1119, 3 L.Ed. 2d 979; Esters v. United States, 260 F.2d 393, 397 (8 Cir. 1958); Stoneking v. United States, 232 F.2d 385, 390–392 (8 Cir. 1956), cert. denied 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54. This is the situation here.

4. The testimony to which objection is made is that introduced by the government to prove that Bass was in the gambling business, that he controlled gambling in West Memphis, and that he collected pay-offs from other dice establishments there. A number of gambling house proprietors testified as to weekly payments by them to Bass for permission to operate. A former West Memphis police captain testified that Bass was a close associate of the chief of police, that he was the leader of the gambling, that there were a number of places paying off to Bass, that nothing was done to stop the gambling, and that he saw Bass pay money to the chief. In its instructions to the jury the court specifically stated that the government was required to prove beyond a reasonable doubt that the defendant was engaged in gambling activity and that in considering this they could consider evidence tending to show that operators of other establishments made payoffs to Bass for the privilege of operating their own places of business. We find no infringement of the defendant's rights in the admission of this evidence. The statute is directed to "the promotion, management, establishment, or carrying on, of any unlawful activity" in the state in which it is committed. Consequently, the government had to prove the existence of the activity and its illegality. This evidence was directed to proof of this and, as restricted by the court, its admission was proper.

5. The defendant's constitutional argument is that § 1952 is vague and indefinite, that it was not enacted for the purpose of enforcing state laws, and that if it is to be construed as raising a presumption of abetment and inducement, it then denies Bass the presumption of innocence, places the burden of proof on him,

and deprives him of due process under the Fifth Amendment.

 What we have just said about appropriate inferences which the jury might draw answers the argument as to the presumption of innocence and burden of proof. We cannot hold that the statute is constitutionally questionable because of vagueness. It embraces commonly understood words and prescribes a clear standard. In the face of this kind of challenge at least three district courts have already upheld its constitutionality. United States v. Teemer, 214 F.Supp. 952, 956 (N.D.W.Va.1963); United States v. Barrow, 212 F.Supp. 837, 841–842 (E.D.Pa.1962); United States v. Smith, 209 F.Supp. 907, 917–918 (E.D. Ill.1962). See United States v. Ryan, 213 F.Supp. 763 (D.Colo.1963). We agree.

Affirmed.