Lee Mansell GILSTRAP and Marcus Randolph Martin, Appellants,

v.

UNITED STATES of America, Appellee.

No. 24487.

United States Court of Appeals Fifth Circuit.

Jan. 31, 1968.

Rehearing Denied March 1, 1968.

Robert B. Thompson, Gainesville, Ga., for appellants.

Allen L. Chancey, Jr., Asst. U. S. Atty., Charles L. Goodson, U. S. Atty., Atlanta, Ga., for appellee; Charles Ruff, Jeremy Zimmerman, Attys., Dept. of Justice, of counsel.

Before MARIS,* THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellants and two other defendants were tried by a jury under a four-count indictment charging them with conspiracy to violate and substantive violations of 18 U.S.C. §§ 2, 371 and 1952. The indictment charged that between January 1 and March 1, 1965, the defendants and a man named Stephen Alexander Price conspired, in violation of 18 U.S.C. § 371, to use freight, telephone and telegraph facilities in interstate commerce with the intent to carry on an unlawful gambling enterprise in violation of the laws of Georgia and further in violation of 18 U.S.C. §§ 2 and 1952.

The indictment further charged that Gilstrap used the interstate facilities of Western Union Telegraph Company between Atlanta, Georgia, and Las Vegas, Nevada, to carry on an unlawful business enterprise involving gambling offenses in violation of Georgia law; that Gilstrap and one Coley used the interstate telephone facilities of Southern Bell Telephone and Telegraph Company between Rockdale County, Georgia, and Las Vegas, Nevada, to carry on such unlawful business enterprise; and that

* Of the Third Circuit, sitting by designation.

Gilstrap and one Mullis used the interstate trucking facilities of certain trucking lines to carry on such illegal purposes between Las Vegas, Nevada, and Atlanta, Georgia.

■ Prior to the trial appellants moved to dismiss the indictment on the ground that it was too vague in that it alleged an unlawful activity as required by 18 U.S.C. § 1952 but referred to the violation of Georgia law as a violation of the Code of Georgia Annotated, a private publication, and not to the official Code of Georgia of 1933. There is no merit to this contention for Rule 7(c) of Federal Rules of Criminal Procedure requires only that the indictment shall state the official or customary citation of the statute, and that error in the citation shall not be ground for dismissal of the indictment if the error did not mislead the defendants to their prejudice. It is obvious that appellants were in no way prejudiced and the citation to the Code of Georgia Annotated was sufficient.

■ Appellants further contended that 18 U.S.C. § 1952 is unconstitutionally vague and indefinite and does not sufficiently and concisely define a criminal offense, in violation of the Fifth Amendment to the United States Constitution; that said section is unconstitutional for the reasons that its provisions exceed the power granted Congress in Article 1, Section 8 of the United States Constitution; that the section is unconstitutional because it constitutes an encroachment upon powers reserved by the Tenth Amendment of the United States Constitution to the States and therefore violates that amendment; and finally, the statute is unconstitutional because it infringes upon the right of citizens to travel freely and use the instrumentalities of interstate commerce in interstate travel. None of these contentions has merit. Appellants concede that the statute has survived other attacks based upon substantially the same grounds. They were doubtless referring to the cases of United States v. Zizzo, 7 Cir., 1964, 338 F.2d 577, cert.

denied 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965); Turf Center, Inc. v. United States, 9 Cir., 1963, 325 F.2d 793; Bass v. United States, 8 Cir., 1963, 324 F.2d 168, where the statute was adjudged constitutional by the Seventh, Eighth and Ninth Circuits. The power of Congress to regulate commerce has been used before to prohibit the use of interstate facilities to effect an illegal purpose. See, e. g., United States v. Johnson, 7 Cir., 1945, 149 F.2d 53, cert. denied, 326 U.S. 722, 66 S.Ct. 28, 90 L.Ed. 428 (1945). The statute does not encroach upon rights of the States reserved by the Tenth Amendment. See Marshall v. United States, 9 Cir., 1966, 355 F.2d 999. The district court's ruling which denied appellants' motion to dismiss the indictment was correct.

The jury found Coley guilty on Counts One and Three, Martin guilty on Count One and Gilstrap guilty on all four counts. Defendant Mullis was allowed to enter a plea of nolo contendere and was not tried with the other defendants. Gilstrap and Martin bring this appeal.

At the trial, Stephen Price, the fifth man in the conspiracy, testified as a witness for the Government to show Gilstrap's prior dealings in the gambling business and to establish a motive on the part of Gilstrap to commit the crimes presently charged against him. Price testified that he had been Gilstrap's partner in a gambling operation at a place called Yarborough Estates, near McDonough, Georgia, and that after this operation terminated, Gilstrap hired him to work as a crap dealer in another gambling place identified as a concrete block building in Rockdale County, Georgia, about one and one-half miles from the Yarborough Estates place. Within two months of its opening, this second operation was raided by the police and Gilstrap's gambling equipment was confiscated. Soon thereafter, during January of 1965, Gilstrap and Coley contacted Price to inquire about the availability of some used gambling equipment. In the presence of Gilstrap and Coley, Price telephoned a Mr. Sulli-

van with Christy Jones and Company in Las Vegas, Nevada, who informed him that he had such equipment for sale and told him what the cost would be. One of the men, either Gilstrap or Coley, gave Price the money for the equipment and instructed him to order it in Coley's name, and to charge any phone calls he might have to make to Coley's telephone number. · Price did as he was instructed and ordered the equipment by telephone. When the equipment was late in arriving, Coley became concerned and persuaded Price to trace and expedite delivery of the equipment. Price made several calls to Las Vegas and to St. Louis, Missouri, again charging them to Coley's phone number, and eventually located the equipment in Atlanta, Georgia.

Not long after these transactions were completed, Gilstrap hired Price to work at a gambling establishment in Augusta, Georgia, called the Paramount Club, where defendants Coley and Martin also were employed.

. The defendants concede that the testimony of the other witnesses and the documentary evidence established that the gambling equipment was shipped via truck freight from Las Vegas to Atlanta, that Coley made inquiry concerning the shipment, and that when it arrived in Atlanta, Mullis picked it up, using the name Coley. The defendants also concede that the evidence established that a Western Union money order in the amount of $1,895.84 was sent from Atlanta to Christy Jones and Company in Las Vegas, Nevada, and that the jury could have reasonably inferred that this was the money order Price testified he sent to cover the cost of the equipment. The defendants further concede that the evidence disclosed that between January 1 and March 1, 1965, a number of long-distance telephone calls were made from, to and among the defendants, including such locations as Gilstrap's home, Martin's home, the house Martin rented in Augusta, Coley's residence, Mullis' residence, and several pay stations located in the vicinity of the Para-

mount Club in Augusta, Georgia; and that the record will support a finding by the jury that such calls were made.

Appellants contend that the court erred in admitting evidence of Gilstrap's prior criminal activity on the ground that the events were remote in time to the offenses charged in the indictment; that they had no relevancy to the issue on trial; that they formed no issue to be tried; and that the only purpose would be to prejudice the jury against Gilstrap. The Government argues that evidence of Gilstrap's involvement in the gambling business was admissible to prove his motive and intent to commit the crimes for which he was charged.

The evidence shows that Gilstrap had conducted gambling operations on at least two prior occasions and that after the termination of his last operation, his gambling equipment had been seized. The jury could reasonably draw the inference from such evidence that Gilstrap intended to continue his illegal gambling activity and to replace the gambling equipment which had been confiscated.

Generally, evidence of prior criminal activity of a similar nature is inadmissible to prove the commission of a later offense. However, there are exceptions to this general rule of exclusion, and where intent and knowledge are essential elements of the crime for which the defendant is being tried, evidence of other transactions, even though criminal in nature, is admissible to prove the necessary criminal intent or guilty knowledge, if the transactions are so connected with the offense charged that they serve to show a general pattern. Pardo v. United States, 5 Cir., 1966, 369 F.2d 922. Evidence that similar or related offenses were committed over a period of time tends to show a consistent pattern of conduct highly relevant to the issue of intent. Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949).

Although the evidence concerning Gilstrap's gambling operations did not constitute conclusive proof of his guilt, it was nevertheless admissible to

show that he had sufficient motive and intent to replace the confiscated equipment in order to continue with his business of gambling. The trial judge was careful to instruct the jury that the evidence of defendants' prior gambling activities did not create an inference that they were conducting similar activities during the time charged in the indictment, and that the evidence was admitted for the limited purpose of indicating a motive on the part of the defendants for undertaking the particular conduct with which they were previously charged.

■ The evidence must be of similar acts occurring reasonably near in time and reflecting intent similar to that charged in this case. Whaley v. United States, 9 Cir., 1963, 324 F.2d 356, cert. denied, 376 U.S. 911, 84 S.Ct. 665, 11 L.Ed.2d 609 (1964). We find that the incidents testified to by Price were not remote in time to the offenses charged in the indictment. The first gambling operation at Yarborough Estates occurred only one year before Gilstrap was arrested and the operation in the concrete block building was just six months prior to his arrest. It is unrealistic to say that these operations, organized and operated in the span of only one year's time, are remote in time. Therefore, we hold that the court did not err in admitting this testimony by the Government witness, Price.

Appellant also contends that the court should have excluded from evidence the file cards taken under search warrant from the offices of Christy Jones and Company and the file of work sheets and invoices taken under search warrant from the home of Wilbert Sullivan, an agent for Christy Jones and Company, on the ground that they had not been established as authentic records of the company and that they were unconnected to the defendants.

■■ The general rule is that such records are not admissible as evidence under the Official Records Act (28 U.S.C. § 1732) unless a proper foundation is laid, establishing them as records made in the regular course of business. Bisno v. United States, 9 Cir., 1961, 299 F.2d 711, cert. denied, 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962); rehearing denied, 371 U.S. 855, 83 S.Ct. 51, 9 L.Ed.2d 94 (1962). The testimony of the witness, Price, established that the records taken from the offices of Christy Jones and Company and from their agent, Sullivan, were authentic and regular business memoranda of the transactions between him and Sullivan, and firmly connects the defendants to these records. They were merely corroborative of prior oral testimony in the case. We find, therefore, that the proper predicate was laid for the introduction of these records into evidence.

■ Appellant Martin contends that the record is insufficient to sustain a finding by the jury beyond a reasonable doubt that he knew of the existence of the conspiracy and intended to participate in the unlawful enterprise.

In Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959), in holding that the evidence was insufficient to establish knowledge on the part of the employees of certain numbers operators to sustain a conviction of conspiracy to evade income taxes, the Supreme Court said:

"It is fundamental that a conviction for conspiracy under 18 U.S.C. § 371, * * * cannot be sustained unless there is 'proof of an agreement to commit an offense against the United States.' Pereira v. United States, 347 U.S. 1, 12, 74 S.Ct. 358, 364, 98 L.Ed. 435. There need not, of course, be proof that the conspirators were aware of the criminality of their objective, but an essential ingredient of the proof was knowledge on the part of Smith and Law that Ingram and Jenkins were liable for federal taxes by reason of the gambling operation. 'Without the knowledge, the intent cannot exist.' Direct Sales Co. v. United States, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674."

The record, and in particular the testimony of Price, established that Martin

was closely involved in Gilstrap's gambling operations and that he was obviously aware of Gilstrap's intention to set up a gambling operation at the Paramount Club in Augusta, Georgia.

Price testified that Martin, whom he had originally met in Las Vegas, worked as a crap dealer for him and Gilstrap at Yarborough Estates and that later both he and Martin had been employed by Gilstrap as crap dealers at his concrete block building gambling operation. The evidence shows that Martin anticipated the commencement of gambling operations at the Paramount Club by renting a house in Augusta, Georgia, for the month of February, although the equipment was not delivered until February 4, 1965. Furthermore, there were a number of telephone calls between Martin and Gilstrap and other members of the conspiracy on and after the date of delivery. Martin was obviously more than a hired hand. He had worked with Gilstrap on at least two other occasions, he knew that Gilstrap had lost all of his equipment in the raid on his last operation, and he had advance notice of the operations at the Paramount Club because he relocated his residence in Augusta, Georgia, four days before they began, and was thereafter employed in the Paramount Club as a crap dealer.

We hold that the jury could have reasonably found that Martin was familiar with the gambling business; that he had prior contacts with both Gilstrap and Price; that he had moved to Augusta in anticipation of the arrival of the gambling equipment and the start of the operation of the Paramount Club; was then employed as a crap dealer; and that he had numerous conversations with Gilstrap in connection therewith; accordingly, that the jury was justified in finding that Martin was a member of the conspiracy.

We have carefully considered all other points raised by appellants and find them to be without merit.

The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. Moody v. United States, 5 Cir., 1967, 377 F.2d 175; Peters v. United States, 5 Cir., 1967, 376 F.2d 839. The evidence in this case amply supports the jury's verdict.

*Affirmed.*