UNITED STATES of America, Plaintiff,

v.

William BERGDOLL et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

John J. BURRELL et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

John J. BURRELL et al., Defendants.

Cr. A. Nos. 75–164—75–166.

United States District Court,
D. Delaware.

March 10, 1976.

W. Laird Stabler, Jr., U. S. Atty., and John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for plaintiff in Cr. A. Nos. 75–164, 75–165 and 75–166.

Harold Schmittinger and I. Barry Guerke, of Schmittinger & Rodriguez, Dover, Del., and Martin G. Weinberg, of Oteri & Weinberg, Boston, Mass., for defendants Burrell and Rote in Cr. A. No. 75–165 and for defendants Burrell, Rote, Moss, Crook, Haseltine, Wagoner, Freund, Topp, Smith, Lockhard, Donahue, Garner and Dombroski in Cr. A. No. 75–166.

Carl Schnee and David E. Brand, of Schnee & Castle, Wilmington, Del., and James R. Yon, Tampa, Fla., for defendants Bergdoll, Cartledge, Fleet and Peterson in Cr. A. No. 75–164 and for defendants Byerly, John Gilkes, Thomas H. Gilkes, Healy and Osgood in Cr. A. No. 75–165.

Michael L. Pritzker and David P. Schneider, of Pritzker & Glass, Ltd., Chicago, Ill., for defendants Joseph Tevebaugh, Patrick Tevebaugh, Tilton and Maxwell in Cr. A. No. 75–166.

## OPINION

LATCHUM, Chief Judge.

The defendants in these three cases were arrested on July 1, 1975 in and around Dover, Delaware by various federal, state and local law enforcement agents and held on state charges arising out of an alleged scheme to import illegally and to distribute a large amount of marihuana. One week later on July 8, 1975 a grand jury of this district returned indictments against twenty-four of the twenty-six defendants named in these three cases. (Cr. A. Nos. 75–95 through 75–104). Thereafter, on November 6, 1975 the grand jury returned indictments against the original twenty-four defendants and two additional defendants. The new indictment in Criminal Action No. 75–164 (the "164 indictment") charged the defendants with (1) possession of marihuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), or (2) violation of the Travel Act, 18 U.S.C. § 1952, for the purpose of possessing with the intent to distribute marihuana, or (3) conspiracy to possess with intent to distribute marihuana contrary to 21 U.S.C. § 841(a)(1) in violation of 21 U.S.C. § 846, or some combination thereof. The defendants in Criminal Action No. 75–165 (the "165 indictment") were accused in some combination of (1) conspiracy in violation of 21 U.S.C. §§ 846 and 963 to import and distribute marihuana contrary to 21 U.S.C. §§ 841(a)(1), 952, 955, 957, 958, and 960, (2) importing marihuana, contrary to 21 U.S.C. § 952(a), in violation of 21 U.S.C. § 960(a)(1), (3) transferring marihuana from a vessel without prior approval of the Attorney General contrary to 21 U.S.C. § 954 and in violation of 21 U.S.C. § 960(a)(1), or (4) possessing marihuana on board a vessel arriving in the United States without its having been entered on a manifest, contrary to 21 U.S.C. § 955, and in violation of 21 U.S.C. § 960(a)(2). The defendants in Criminal Action No. 75–166 (the "166 indictment") were charged with (1) the possession of marihuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), or (2) the violation of the Travel Act, 18 U.S.C. § 1952, for the purpose of possessing marihuana with the intent to distribute, or (3) engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, or (4) conspiracy to distribute or possess with intent to distribute marihuana contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846, or some combination thereof.

The defendants have filed extensive motions to dismiss,[1] and the Court now turns to consider the issues raised by these motions.[2]

## I. Drug Control Act

Defendants contest the constitutionality of several provisions of the Comprehensive

---

1. Docket Items 5, 20, Cr. A. No. 75–164; Docket Items 2, 18, 44, Cr. A. No. 75–165; Docket Items 17, 34, 49, Cr. A. No. 75–166.

 Contentions initially set out by some defendants were frequently adopted by other defendants. (Docket Item 10, Cr. A. No. 75–164; Docket Item 29, Cr. A. No. 75–165; Docket Items 64, 73, Cr. A. No. 75–166.)

2. The government has acquiesced in several of the defendants' demands, and, therefore, the Court need not address those contentions.

 (a) In response to the motion to elect between Count I of the 165 indictment and Count XXX of the 166 indictment filed by defendants Burrell and Rote, the government agreed to the dismissal of Count I of the 165 indictment to the extent that it includes Burrell and Rote. (Docket Item 18, par. 10; Docket Item 48, Cr. A. No. 75–165).

 (b) Because Burrell and Rote are no longer named in two indictments, resolution of their discriminatory prosecution claims growing out of their double indictment is now unnecessary. (Docket Item 18, par. 14, Cr. A. No. 75–165).

 (c) The defendants at this stage of the proceedings have abandoned their contention that Cannabis sativa L cannot be distinguished morphologically and, therefore, the government cannot prove an essential element of the offense. (Docket Item 5, par. 8, Cr. A. No. 75–164; Docket Item 2, par. 8; Docket Item 18, par. 9, Cr. A. No. 75–165; Docket Item 17, par. 9; Docket Item 34, par. 8, Cr. A. No. 75–166). *United States v. Sifuentes,* 504 F.2d 845, 849 (C.A.4, 1974); *United States v. Moore,* 446 F.2d 448 (C.A.3, 1971), *cert. denied,* 406 U.S. 909, 92 S.Ct. 1617, 31 L.Ed.2d 820 (1972). (Docket Item 27, p. 20, Cr. A. No. 75–164; Docket Item 47, p. 20, Cr. A. No. 75–166).

 (d) The government has consented to dismissal of Count III of the 165 indictment. (Docket Item 18, pars. 11–12, Cr. A. No. 75–165; Docket Item 31, p. 233, Cr. A. No. 75–164).

Drug Abuse Prevention and Control Act of 1970 ("Drug Control Act"), 21 U.S.C. § 801 et seq., to the extent it seeks to regulate conduct involving marihuana.[3] They contend that the methods selected by Congress for controlling the importation, possession, and sale of marihuana are arbitrary and irrational, constitute an abuse of the police power and a denial of due process, and represent an unwarranted invasion of privacy in contravention of the Fourth, Fifth and Ninth Amendments. Also, defendants claim to have suffered invidious and irrational discrimination as a consequence of Congressional disregard for the equal protection concepts embodied in the Due Process Clause of the Fifth Amendment. They complain that, first, the Drug Control Act fails to recognize the distinctions between marihuana and the so-called hard drugs which are also listed on Schedule I(c), 21 U.S.C. § 812(c), and, second, Congress without a rational basis decided to punish individuals involved with marihuana without punishing individuals involved with what are perceived as substantially more harmful substances such as alcoholic beverages and tobacco. Finally the defendants invoke the Eighth Amendment and contend that the punishment prescribed for marihuana offenses amounts to cruel and unusual punishment.

The Drug Control Act as it applies to marihuana has withstood diverse constitutional attacks. *United States v. Horsley,* 519 F.2d 1264 (C.A.5, 1975); *United States v. Kiffer,* 477 F.2d 349 (C.A.2, 1973), *cert. denied,* 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65 (1973); *United States v. Rodriquez-Camacho,* 468 F.2d 1220 (C.A.9, 1972), *cert. denied,* 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973). Because there is no colorable claim of a fundamental constitutional right to import or to distribute marihuana, *United States v. Kiffer, supra,* 477 F.2d at 352, the statutory scheme will be upheld unless it either has no rational relationship to a proper legislative purpose,

*Marshall v. United States,* 414 U.S. 417, 427, 94 S.Ct. 700, 706, 38 L.Ed.2d 618, 626 (1974); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563, 572 (1955), or violates a narrow and specific constitutional provision because of the manner in which it is implemented, *e. g.,* if punishment mandated by the statute were inconsistent with the Eighth Amendment.

When it determined that marihuana should be classified as a Schedule I(c) controlled substance, 21 U.S.C. § 812(c), Congress was keenly aware that "[t]he extent to which marihuana should be controlled is a subject upon which opinions diverge widely." 1970 U.S.Code Cong. & Admin.News, p. 4577. It is, however, obvious that Congress had a rational basis for classifying marihuana as a Schedule I controlled substance. *United States v. Rodriquez-Camacho, supra,* 468 F.2d at 1222; *United States v. LaFroscia,* 354 F.Supp. 1338, 1341 (S.D.N.Y.1973), *aff'd,* 485 F.2d 457 (C.A.2, 1973). Furthermore, it should be emphasized that defendants are not charged with mere possession of marihuana destined for personal consumption; instead, it is alleged that they participated in a massive effort to import and distribute marihuana. Thus, defendants' contentions addressed to individual freedom and privacy also are misplaced. *Cf. United States v. Reidel,* 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971).

In addition, defendants' arguments based on equal protection considerations also lack merit. First, the Congressional decision to prohibit use of marihuana while allowing consumption of alcohol and tobacco does not deprive defendants of any constitutional rights because, "[i]f Congress decides to regulate or prohibit some harmful substances, it is not thereby constitutionally compelled to regulate or prohibit all." *United States v. Kiffer, supra,* 477 F.2d at 355. Second, inclusion of marihuana with the so-called hard drugs on Schedule I can-

---

**3.** Specifically challenged are 21 U.S.C. §§ 812(c), 841(a)(1), 846, 952, 955, 957 and 960. (Docket Item 5, pars. 1–5, Cr. A. No. 75–164; Docket Item 2, pars. 1–5; Docket Item 18, pars. 1–5, Cr. A. No. 75–165; Docket Item 17, pars. 1–5; Docket Item 34, pars. 1–5, Cr. A. No. 75–166).

not be considered irrational, *id.* at 356–57, and in light of the very limited constitutional interests asserted by defendants, it is clear that they have not been denied equal protection of law.

■ Similarly, the contention that the sanctions imposed by the Drug Control Act on individuals convicted of marihuana offenses constitute cruel and unusual punishment within the scope of the Eighth Amendment must be rejected.[4] *United States v. Lozaw,* 427 F.2d 911, 917 (C.A.2, 1970) (applying predecessor section).

In conclusion, defendants' broadside assault on the Drug Control Act as it relates to marihuana has not convinced the Court of any constitutional defects in the statutory plan.

## II. Travel Act

■ Twenty-one of the defendants have been charged with violating 18 U.S.C. § 1952[5] (the "Travel Act") by traveling in interstate commerce "with intent to promote, manage, or carry on, or to facilitate the promotion, management or carrying on of an unlawful activity, that is, the distribution or possession of marihuana with intent to distribute same." These defendants assert that the Travel Act is unconstitutional for a variety of reasons,[6] but these contentions are without merit because the Travel Act is not (1) void for vagueness, *United States. v. Cerone,* 452 F.2d 274, 286 (C.A.7, 1971), *cert. denied,* 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972); *United States v. Cozzetti,* 441 F.2d 344, 348 (C.A.9, 1971);

*Gilstrap v. United States,* 389 F.2d 6, 8 (C.A.5, 1968), *cert. denied,* 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968); *United States v. Barrow,* 363 F.2d 62, 65 (C.A.3, 1966), *cert. denied,* 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967); *Bass v. United States,* 324 F.2d 168, 173 (C.A.8, 1963); (2) beyond the power conferred on Congress by the Commerce Clause, Art. I, § 8, cl. 3, or violative of the Tenth Amendment, *Gilstrap v. United States, supra,* 389 F.2d at 8; *United States v. Barrow, supra,* 363 F.2d at 65; *Marshall v. United States,* 355 F.2d 999, 1004 (C.A.9, 1966), *cert. denied,* 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54, *reh. denied,* 385 U.S. 964, 87 S.Ct. 388, 17 L.Ed.2d 309 (1966); *United States v. Zizzo,* 338 F.2d 577, 579 (C.A.7, 1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965); *United States v. Smith,* 209 F.Supp. 907, 915 (E.D. Ill.1962); or (3) an impermissible interference with the constitutional rights of free speech, assembly, or travel, *United States v. Cerone, supra,* 452 F.2d at 286–87; *Gilstrap v. United States, supra,* 389 F.2d at 8; *United States v. Corallo,* 281 F.Supp. 24, 28 (S.D.N.Y.1968); *United States v. Smith, supra,* 209 F.Supp. at 918.

■ These defendants also contend that their alleged conduct does not constitute participation in a "business enterprise" within the meaning of § 1952(b)(1).[7] They point to *United States v. Donaway,* 447 F.2d 940, 944 (C.A.9, 1971), which interpreted the words "business enterprise" as "[referring] to a continuous course of criminal conduct rather than sporadic casual involve-

---

4. See part IV, infra, for consideration of an Eighth Amendment attack on the mandatory sentence and forfeiture provisions of 21 U.S.C. § 848.

5. 18 U.S.C. § 1952 provides in relevant part:
"(a) Whoever travels in interstate or foreign commerce . . . with intent to—
\* \* \* \* \* \*
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in [subparagraph (3)], shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States . . .."

6. Docket Item 5, par. 9, Cr. A. No. 75–164; Docket Item 2, par. 9, Cr. A. No. 75–165; Docket Item 17, pars. 10, 15; Docket Item 34, par. 9, Cr. A. No. 75–166.

7. See note 6 *supra.*

ment in a proscribed activity." *Cf. United States v. Pauldino,* 443 F.2d 1108, 1112 (C.A.10, 1971), *cert. denied,* 404 U.S. 882, 92 S.Ct. 212, 30 L.Ed.2d 163 (1971). However, it is difficult to characterize active participation in a massive operation to import and distribute marihuana as "casual involvement." The alleged conduct shows a profit or business purpose and the scope of the endeavor certainly warrants calling it an enterprise. The alleged activities constituted a "business enterprise" within any reasonable construction of that phrase and "where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended [by Congress]." *United States v. Missouri Pacific R.R.,* 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322, 377 (1929). Furthermore, the goals of the Travel Act are achieved by thwarting first time violators before they have the opportunity to expand their illicit operations. *Spinelli v. United States,* 382 F.2d 871, 889–90 (C.A.8, 1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In sum, although the government at trial will have to prove that the alleged scheme was a "business enterprise," the Court cannot at this stage of the proceedings conclude that the indictments are insufficient to set forth violations of the Travel Act.

III. Grand Jury

 Defendants claim that excessive use of hearsay before the grand jury which indicted them infringed rights secured by the Fifth Amendment.[8] It is clear that basing an indictment solely on hearsay does not violate the Fifth Amendment. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Furthermore, the Court has reviewed the transcript of the grand jury proceedings *in camera.* Three United States Customs Service agents told the grand jury of their firsthand knowledge about the alleged criminal activity. Also appearing before the grand jury was the Drug Enforcement Administration case agent who apparently relied to some extent on the written reports of other law enforcement officers. The need for grand jury consideration of the underlying evidence is greatly reduced when it is recognized that if the other officers had testified before the grand jury they would undoubtedly have referred to the same reports. In any event, the use of hearsay before the grand jury does not mandate dismissal of the pending indictments.

 The defendants also assert a denial of their Fifth Amendment grand jury rights by the lack of a record from the grand jury session which resulted in their first indictments.[9] Although recording of grand jury proceedings is desirable, *United States v. John,* 508 F.2d 1134, 1142 (C.A.8, 1975), *cert. denied,* 421 U.S. 962, 95 S.Ct. 1948, 44 L.Ed.2d 448 (1975); *United States v. Lardieri,* 497 F.2d 317, 318 n.2 (C.A.3, 1974), *modified,* 506 F.2d 319 (C.A.3, 1974), it is not mandatory, *United States v. Crutchley,* 502 F.2d 1195, 1200 (C.A.3, 1974); *United States v. Heck,* 499 F.2d 778, 788 (C.A.9, 1974), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 677 (1974); *United States v. Hedges,* 458 F.2d 188, 190 (C.A.10, 1972); *United States v. Harper,* 432 F.2d 100, 102 (C.A.5, 1970); see Rule 6(d), F.R.Cr.P. Moreover, the grand jury sessions which led to the current indictments were evidently fully recorded, and thus, any adverse consequences flowing from the lack of transcripts of the first grand jury proceedings are greatly reduced. Accordingly, the failure to have recorded the proceedings of the grand jury preceding the first set of indictments does not require dismissal of the pending indictments.

 Defendants contend that the government abused the grand jury process by using its investigative powers as a tool for gathering evidence against the defend-

---

**8.** Docket Item 5, par. 6, Cr. A. No. 75–164; Docket Item 2, par. 6; Docket Item 18, par. 6, Cr. A. No. 75–165; Docket Item 17, par. 6; Docket Item 34, par. 6, Cr. A. No. 75–166.

**9.** Docket Item 5, par. 7, Cr. A. No. 75–164; Docket Item 2, par. 7; Docket Item 18, par. 7, Cr. A. No. 75–165; Docket Item 17, par. 7; Docket Item 34, par. 7, Cr. A. No. 75–166.

ants who, with the exception of Garner and Dombroski, had already been indicted and by employing it as an aid in trial preparation.[10] This contention is devoid of merit. There is no indication that the government used the second grand jury sessions to prepare its case for trial. Instead, a comparison of the first and second sets of indictments shows that changes of some significance took place. Furthermore, none of the defendants and none of their close associates were called before the grand jury. *Cf. Beverly v. United States,* 468 F.2d 732 (C.A.5, 1972). To accept the defendants' arguments in these cases would be to prohibit the government from ever obtaining superseding indictments.[11]

## IV. Continuing Criminal Enterprise

In Count III of the 166 indictment defendant Burrell alone has been charged with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848.[12] Conviction for this offense carries with it a minimum ten year term of imprisonment and activates a special forfeiture provision which is also of great concern to Burrell because he possessed $96,000 in cash at the time of his arrest. In view of these severe sanctions, Burrell vigorously challenges this count on three grounds.[13] First, Burrell argues that § 848 is unconstitutional on its face. Second, he contends that the conduct alleged in the indictment cannot sustain a charge of engaging in a continuing criminal enterprise. Third, Burrell maintains that as a matter of constitutional law, Congress could not authorize punishment in the manner it prescribed for the conduct in which he allegedly engaged.

 First, Burrell perceives a constitutional defect in § 848 arising from the inherent vagueness of the terms "continuing" and "series" which define one of the elements of the offense—"part of a continuing series of violations" of Chapter 13 of Title 21.[14] The argument that § 848 is void for vagueness totally lacks merit. *United States v. Sisca,* 503 F.2d 1337, 1345 (C.A.2, 1974), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Collier,* 493 F.2d 327 (C.A.6, 1974), *cert.*

---

**10.** Docket Item 18, par. 8, Cr. A. No. 75–165; Docket Item 17, par. 8; Docket Item 49, pars. 2–3, 6–7, Cr. A. No. 75–166.

**11.** Defendants also claim that the indictments must be dismissed because of adverse publicity occurring before the second set of indictments and that they should be permitted to examine the entire transcript of the proceedings before the grand jury which returned the current indictments. (Docket Item 49, Cr. A. No. 75–166). These arguments are without merit.

**12.** 21 U.S.C. § 848 provides in part:

"(a)(1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, and to the forfeiture prescribed in paragraph (2); except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine of not more than $200,000, and to the forfeiture prescribed in paragraph (2).

(2) Any person who is convicted under paragraph (1) of engaging in a continuing criminal enterprise shall forfeit to the United States—

(A) the profits obtained by him in such enterprise, and

(B) any of his interest in, claim against, or property or contractual rights of any kind affording a source of influence over, such enterprise.

(b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter [21 U.S.C. §§ 801–966] the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources."

**13.** Docket Item 17, pars. 11–12, Cr. A. No. 75–166.

**14.** Drug Control Act, 21 U.S.C. §§ 801–966.

*denied,* 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974); *United States v. Manfredi,* 488 F.2d 588, 602–03 (C.A.2, 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974). "Continuing" merely requires that the course of illicit conduct span a definite period of time, and the "series" element is established by proof of three or more related violations. *United States v. Collier,* 358 F.Supp. 1351, 1355 (E.D.Mich.1973), *aff'd,* 493 F.2d 327 (C.A.6, 1974), *cert. denied,* 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974).

Second, Burrell also seeks to have the § 848 count dismissed because the conduct alleged does not amount to a continuing criminal enterprise. In essence, he contends that within the meaning of § 848 his alleged violations of the Drug Control Act were neither "continuing" nor part of a "series."[15] At this stage of the proceedings, the Court must confine its analysis to the face of the indictment. *United States v. Raff,* 161 F.Supp. 276, 282 (M.D.Pa.1958).

Rule 7(c)(1), F.R.Cr.P., implementing the Sixth Amendment right "to be informed of the nature and cause of the accusation," requires that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged."

> "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

*Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, 620 (1974); *United States v. Willis,* 515 F.2d 798, 799–800 (C.A.7, 1975) (Stevens, J.); *United States v. Jackson,* 344 F.2d 158 (C.A.3, 1965). In determining the adequacy of an indictment, the Court does not act as a literary critic offering helpful suggestions on more artful or precise draftsmanship. *United States v. Debrow,* 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92, 97 (1953);

*United States v. Little,* 317 F.Supp. 1308, 1310 (D.Del.1970). Thus, an indictment which follows the language of the statute will ordinarily pass muster if all of the elements essential to proving the offense are set forth. See *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882). Where the statutory language does not adequately apprise the defendant of the precise nature of the charge against him, additional facts must be alleged to enable the accused to prepare his defense. *Russell v. United States,* 369 U.S. 749, 765–66, 82 S.Ct. 1038, 1047–48, 8 L.Ed.2d 240, 251–52 (1962); *United States v. Little, supra,* 317 F.Supp. at 1310–11.

The § 848 count charges Burrell with engaging in a continuing criminal enterprise over a period of five days—from on or about June 26, 1975 to on or about July 1, 1975. In *United States v. Midstate Horticultural Co.,* 306 U.S. 161, 166, 59 S.Ct. 412, 414, 83 L.Ed. 563, 567 (1939), *quoting Armour Packing Co. v. United States,* 153 F. 1, 5–6 (C.A.8, 1907), the concept of a "continuing offense" was defined as a "continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy." Contrary to Burrell's assertions, it is possible for criminal acts committed over a period of five days to be "continuing" within the meaning of § 848(b)(2). The indictment clearly informs Burrell of the time frame to which he should direct his defense efforts. Also, his double jeopardy concerns can be relieved by knowing that, if jeopardy does attach in these proceedings, he cannot be charged again for violation of § 848 if the series of violations in a subsequent prosecution includes efforts to import and distribute marihuana during the five day period specified in Count III.

The term "series" in § 848 has been interpreted as requiring three or more related felony violations of the Drug Control Act. *United States v. Collier, supra,*

---

**15.** The sufficiency of the allegations necessary to sustain the other elements of a § 848 indictment is not questioned.

358 F.Supp. at 1355. Count III gives the defendant clear notice of several discrete violations: *e. g.*, importing marihuana, possession of marihuana with intent to distribute, distribution of marihuana and related conspiracies.[16] At trial the government will have to prove more violations than formally were alleged in the indictment, but it is clear that the failure to list every violation comprising the continuing series of violations does not destroy the efficacy of Count III. *United States v. Sperling*, 506 F.2d 1323, 1344 (C.A.2, 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439, 421 U.S. 949, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). Furthermore, Burrell is not entitled to dismissal of Count III simply because he has not been indicted for at least three separate violations. In *United States v. Collier, supra,* 358 F.Supp. at 1355, the defendant was indicted for only two offenses within the Drug Control Act, but the court correctly viewed the problem as one of proof at trial and not as one of sufficiency of the indictment. Burrell's constitutional guarantee that precludes being placed twice in jeopardy for the same offense can be protected by a review of the entire record. *Russell v. United States, supra,* 369 U.S. at 764, 82 S.Ct. at 1047, 8 L.Ed.2d at 251. The acts which the government seeks to prove at trial as part of the continuing series of violations cannot be used again in a § 848 prosecution of Burrell. Thus, neither adequate notice of the charges against him nor protection against violation of his double jeopardy rights is lacking in Count III.

■ In sum, Burrell appears to argue that an enterprise involving many individuals in a single effort to import and distribute marihuana cannot be classified as a "continuing criminal enterprise." He points to cases—*United States v. Sperling, supra, United States v. Sisca, supra,* and *United States v. Manfredi, supra*—involving massive networks for the distribution of controlled substances and argues that his alleged marihuana trading endeavor pales by comparison. It very well may pale by comparison, but that is not the point because his conduct may come within the limits set by Congress in enacting § 848. In *Collier v. United States, supra,* for example, it appears that a § 848 conviction was sustained on proof of a single effort to import and distribute six pounds of cocaine. To require indictment on four or five separate importing conspiracies, as Burrell argues, before the government could prevail in a § 848 prosecution would be to defeat the clear Congressional mandate to deter major distribution operations of controlled substances. 1970 U.S.Code Cong. & Admin. News, p. 4570. Accordingly, Burrell's claim that Count III fails to allege violation of § 848 must be rejected.[17]

---

**16.** Count III of the 166 indictment purports to incorporate the allegations of Count I of the 165 indictment which deals with charges of importing marihuana. The dismissal of Count I of the 165 indictment with respect to Burrell does not vitiate the count which makes reference to it, *see Parker v. United States,* 252 F.2d 680 (C.A.6, 1958), *cert. denied,* 356 U.S. 964, 78 S.Ct. 1003, 2 L.Ed.2d 1071 (1958). However, although incorporation within the same indictment is possible, Rule 7(c)(1), F.R.Cr.P., *Blitz v. United States,* 153 U.S. 308, 317, 14 S.Ct. 924, 927, 38 L.Ed. 725, 728 (1894), it is far from clear that a count in one indictment can incorporate allegations made in a separate indictment.

Nevertheless, this is an issue which the Court need not resolve because the facts set forth in the 165 indictment are not essential. It is crucial that Burrell be given fair notice of the nature of the violations which make up the series of violations. Count III itself sufficiently apprises Burrell of this information by its par-

enthetical reference to "conspiracy to unlawfully import marihuana."

**17.** Burrell also argues that the forfeiture claim in the § 848 count must be dismissed because it fails to comply with the requirements of Rule 7(c)(2), F.R.Cr.P., which provides:

"Criminal Forfeiture. When an offense charged may result in a criminal forfeiture, the indictment or the information shall allege the extent of the interest or property subject to forfeiture."

As the advisory committee note indicates, 56 F.R.D. 157, one reason for the promulgation of Rule 7(c)(2) was implementation of the limited common law criminal forfeiture provision of § 848.

"Under the common law, in a criminal forfeiture proceeding the defendant was apparently entitled to notice, trial, and a special jury finding on the factual issues surrounding the declaration of forfeiture which followed his criminal conviction." *Id.*

 Third, Burrell next argues that application of § 848 to him would be unconstitutional. He contends that the ambiguity of § 848(b)(2) precludes application of the statute to cases such as his which he views as on the periphery of conduct proscribed by the statute. In effect, he argues again that the government's evidence is inadequate to sustain a conviction under § 848, but this contention should be made at a more appropriate time—at trial. Also, Burrell claims that the severe sanctions accompanying a § 848 conviction constitute a denial of equal protection and amount to cruel and unusual punishment as proscribed by the Eighth Amendment. This claim is also without merit. *United States v. Collier, supra,* 358 F.Supp. at 1356–57.

 Therefore, Burrell's motions seeking dismissal of Count III of the 166 indictment will be denied.[18]

## V. Speedy Trial

Defendants urge the Court to dismiss the prosecution because of failure by the government to comply with this district's speedy trial plan adopted under the mandate of Rule 50(b), F.R.Cr.P., and 18 U.S.C. § 3164, a denial of the right to a speedy trial as guaranteed by the Sixth Amendment, and unnecessary delay in bringing the defendants to trial in violation of Rule 48(b), F.R.Cr.P.[19]

---

Count III informs Burrell that the government seeks forfeiture of "all profits, interest in, claims against or property or contract and rights" that Burrell obtained from his participation in the continuing criminal enterprise. Thus, Count III does allege the "extent of the interest or property subject to forfeiture" and, therefore, provides Burrell with sufficient notice. Furthermore, Count III expressly incorporates the allegations of Count XXX, the conspiracy count. Rule 7(c)(1), F.R.Cr.P. One of the overt acts (29) set forth in the conspiracy count is that on July 1, 1975 Burrell operated a 1973 Chevrolet which contained $96,000. Although the government's forfeiture relief is not limited to this money, Burrell has received more than adequate notice of the government's claim to it. Burrell's reliance on *United States v. Hall,* 521 F.2d 406 (C.A.9, 1975), is misplaced because in *Hall* the indictment provided no notice of any forfeiture efforts. Defendant Burrell's motion to dismiss the forfeiture allegations from Count III will be denied. However, it should be noted that the Court has not considered whether any of Burrell's property is subject to forfeiture; this issue and others, of course, remain for trial. The Court has merely resolved the limited challenge brought under Rule 7(c)(2), F.R.Cr.P.

18. Defendant Burrell also maintains that "arbitrary, bad faith, intentionally discriminatory, unlawful selective prosecution by the Government" compels dismissal of the § 848 count. (Docket Item 17, par. 14, Cr. A. No. 75–166). In order to succeed with his discriminatory prosecution defense, Burrell must establish:

"(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."

*United States v. Berrios,* 501 F.2d 1207, 1211 (C.A.2, 1974); *United States v. Berrigan,* 482 F.2d 171 (C.A.3, 1973); see *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505; 7 L.Ed.2d 446, 452 (1962). Since the government's decision to seek a § 848 count in the indictment could not have been based on any improper prosecutorial motive, it is clear that Burrell cannot prevail on this claim. Burrell, in effect, concedes that no recognized constitutional concerns such as Burrell's race, religion, or political inclinations motivated the exercise of prosecutorial discretion. Instead, he fatuously contends that the decision to charge him with violation of § 848 interferes with "his constitutionally protected rights to possess United States currency." Not surprisingly, Burrell has not offered any authority in support of this novel theory. Perhaps Burrell is actually arguing that the § 848 count irritates his notions of fundamental fairness because, if he had not had $96,000 in his possession at the time of his arrest, the indictment would not have contained a § 848 count. Nevertheless, the decision to invoke forfeiture provisions is appropriately within the discretion of the prosecution. Therefore, because Burrell has failed to show that the § 848 count was included in the indictment as a consequence of constitutionally defective conduct by the government, his efforts to have the § 848 count dismissed on discriminatory prosecution grounds must be rejected.

19. Docket Item 20, Cr. A. No. 75–164; Docket Item 18, par. 13; Docket Item 44, Cr. A. No. 75–165; Docket Item 17, par. 13, Cr. A. No. 75–166.

The defendants were arrested on July 1, 1975 and detained on state charges until twenty-four of the twenty-six defendants were indicted by a grand jury of this district on July 8, 1975. (Cr. A. Nos. 75–95 through 75–104). They were released from custody on July 9, 1975 [20] and were arraigned before this Court on July 14 and 15, 1975. Within a month thereafter, the government announced its intention to seek new indictments, and on November 6, 1975, superseding indictments were returned by the grand jury which charged all twenty-six present defendants.[21] (Cr. A. Nos. 75–164–66). Defendants were arraigned on these charges on November 19, 1975.

■ The charges made by the grand jury in the superseding indictments do not alter the speedy trial rights of the defendants. The number of indictments was reduced by joinder of defendants. Two previously unindicted individuals were named as defendants. Also, defendant Burrell was charged in the November indictment for the first time with violation of 21 U.S.C. § 848. However, these differences do not appear to be the result of newly discovered evidence or other changes in circumstances since the first indictment. Thus, the speedy trial rights of the defendants attached in July 1975, and the effective date was not affected by the superseding indictments of November. Otherwise, the government, by manipulating the grand jury process, could defeat defendants' speedy trial rights by the mere charade of new indictments.

1. *Rule 50(b), F.R.Cr.P., Speedy Trial Plan.*

At the outset, it must be determined whether the speedy trial plan in effect in this district in July 1975 (Plan for the United States District Court for the District of Delaware Adopted Pursuant to Federal Rule of Criminal Procedure 50(b)) governs or whether the plan which was adopted August 19, 1975, approved September 22, 1975, and implemented September 29, 1975 (Interim Plan for the United States District Court for the District of Delaware for Achieving Prompt Disposition of Criminal Cases) controls these proceedings. Section 15 of the new plan provides that the new plan "shall apply to all criminal cases in which . . . the indictment [is] returned after [September 29, 1975]." Because the present indictments were returned more than one month after the effective date of the new plan, the provisions of the new plan must be applied.[22]

Section 5(c) of the speedy trial plan requires that the trial of any defendant who neither is in custody solely on account of the pending charges nor is classified as a high risk individual begin within 180 days of arraignment if a plea of not guilty was entered at arraignment. That period expired January 10 or 11, 1976, without the defendants having been brought to trial. However, the Court is empowered by Section 9(b) to extend the time limits in appropriate circumstances,[23] and there is no requirement that the party seeking the benefit of an extension make a request by motion. Accordingly, the lack of a government motion to extend time does not mandate a finding in favor of defendants.

■ Section 9(b) outlines criteria which the Court may consider in deciding to extend the time limits prescribed by the plan. The list of factors is not exclusive because it expressly provides that the Court may weigh these considerations "among other [not explicitly set forth] reasons." The net effect of this general language is to give the Court some rough guidance, but, more

---

**20.** None of the defendants has been in custody on charges arising out of the July 1 incident since July 9.

**21.** Two defendants—Garner and Dombroski—were not indicted in July and are not currently in a position to raise speedy trial contentions. With respect to the speedy trial issues, reference to the "defendants" does not include Dombroski and Garner.

**22.** No one has suggested that the government sought superseding indictments in order to gain any advantage from the new plan.

**23.** The restrictions imposed with respect to defendants covered by Sections 5(a) & (b) do not apply to the defendants in these cases because they are not incarcerated and have not been designated as high risk defendants.

important, it clearly confers substantial discretion on the Court in determining if a violation of the speedy trial plan has occurred. *See United States v. Young,* Cr. A. No. 2423 (D.Del. April 4, 1974).

Section 9(b)(10) of the plan indicates that the deadlines established by the plan may be extended if delay is caused by exceptional circumstances. These cases are unusual for several reasons: number of defendants (26); number of law enforcement officers involved; number of law enforcement agencies participating (United States Drug Enforcement Administration ("DEA"), United States Customs Service, Florida Department of Criminal Law Enforcement, Delaware State Police, Governor's Strike Force (Delaware), and Dover Police Department (Delaware)); geographical extent of alleged criminal activity (Florida to Delaware); and geographical distribution of defendants (Florida, Massachusetts, Pennsylvania and Illinois) and their attorneys (Boston, Chicago and Tampa). Coordination and integration of these extensive law enforcement efforts constituted a complex and difficult task, and to some extent, the investigation is still continuing.

The government's difficulty in collecting the investigative reports and preparing a final report on the investigation was an important source of delay. The DEA did not deliver its case report to the United States Attorney until September 19, 1975. The hiatus of almost three months between arrest and submission of a report can be attributed to several factors. First, the DEA office in Wilmington, comprised of two agents and an inexperienced secretary, was not equipped to handle a case of this magnitude. Second, the flow of information was slowed by the quantity of data and the large number of participating agents. Third, because significant investigative work was required after the arrests, it was not possible for the DEA to produce a case report any sooner in spite of the Assistant United States Attorney's requests for a completed report. For example, telephone numbers, motor vehicle owner identifica-

tions, motel registrations, and various purchases had to be traced. Apparently, an informal DEA policy discourages forwarding of its reports in a piecemeal fashion to a United States Attorney. In sum, the delay caused by preparation of the case report was unavoidable in view of the complexity of these cases.

 At the request of the defendants, the Court *in camera* has reviewed the case file. While the vast majority of separate reports were in final form by September 19, 1975, it does appear that a significant number of reports were filed afterwards—some as late as December. The Assistant United States Attorney, who did not personally receive the DEA report until September 28, 1975, was reluctant to provide discovery to the defendants while he anticipated that additional reports would be forthcoming. Reviewing the voluminous case file in order to satisfy the discovery demands of each of the many defendants undoubtedly required a major effort. Defense counsel were notified of the government's readiness to provide discovery on December 22, 1975. Although the period from September 19 to December 22 seems more than adequate for government compliance, the Court finds that an extension of the 180 day limit is warranted by the difficulty which the government encountered in preparing for trial.

 Furthermore, the complexity of defendants' pre-trial motions requires that an additional extension be granted. See Section 9(b)(1). Various discovery motions, severance motions, suppression motions necessitating an extended evidentiary hearing, and motions to dismiss have been filed. The motions to dismiss, as is evident from this opinion, raise many distinct contentions.

In sum, the Court concludes that no violation of the speedy trial plan has been committed.

 Moreover, if the speedy trial plan had been violated, dismissal of the prosecu-

tion would not be warranted. As Section 10(c) provides, "the failure to conform with the time limits prescribed in this Plan shall not require the dismissal of the prosecution." Although the Court clearly has the power to dismiss the prosecution, *United States v. Furey,* 514 F.2d 1098 (C.A.2, 1975), the extraordinary circumstances of these cases, the absence of any showing of prejudice by the defendants,[24] and the public interest persuade the Court that dismissal of the charges would be inappropriate. The public interest in prompt determination of a defendant's guilt or innocence is the principal emphasis of Rule 50(b), F.R.Cr.P., *United States v. Rodriguez,* 497 F.2d 172, 175 (C.A.5, 1974). The delay in these cases has not been of extended duration and, because a significant portion of the delay is attributable to completing the investigation, the public's concern for proper enforcement work must also be recognized.

### 2. *Constitutional Speedy Trial Claim.*

■ Defendants have also suggested that their Sixth Amendment rights to speedy trials have been violated by the government's delay in bringing them to trial. Their constitutional rights to speedy trials arose on July 8, 1975 when they were indicted by the federal grand jury. *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478 (1971); *United States v. Handel,* 464 F.2d 679 (C.A.2, 1972), *cert. denied,* 409 U.S. 984, 93 S.Ct. 326, 34 L.Ed.2d 249 (1972).

■ This Court's analysis of defendants' constitutional speedy trial claims begins and ends with the four factors set forth in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101, 116 (1972)— length of delay, reason for delay, assertion of right to a speedy trial, and prejudice to defendants. The delay between indictment and trial in these cases has simply been too short to give rise to any constitutional speedy trial infirmities. As discussed above, the number of defendants and the difficulty the government has encountered in reducing the evidence gathered by several enforcement agencies into presentable form are but two proper reasons for delay. Defendants have consistently responded in a timely fashion to the Court's demands, and there is no reason to suppose that they would not have been ready for trial at an earlier date. In light of their preparedness for trial and the primary responsibility of the government to bring the case to trial, the absence of a formal request for trial cannot be held against defendants. Finally, defendants have been unable to provide a plausible explanation of how a delay of approximately eight months has prejudiced them. See note 24 *supra.*

In sum, after balancing the considerations of *Barker v. Wingo, supra,* the Court finds that defendants' Sixth Amendment speedy trial rights have not been violated.

### 3. *Rule 48(b), F.R.Cr.P.,*[25] *Dismissal.*

■ Although the factors considered with respect to the Sixth Amendment claim are equally applicable to an analysis under Rule 48(b), *Hodges v. United States,* 408 F.2d 543, 551 (C.A.8, 1969), it is clear that Rule 48(b) "sets a more exacting standard

---

**24.** At oral argument on the motions to dismiss, defendants offered two examples of the prejudice which they had suffered. First, two defendants pleaded guilty in order to be eligible for sentencing under the Youth Corrections Act, 18 U.S.C. § 5005 et seq. Defendants maintain that a prompt trial would have decided the defendants' guilt or innocence before they became too old for the beneficial provisions of the Youth Corrections Act. Second, in November defendant Peterson apparently confessed to his illegal conduct. This confession could not have been obtained, defendants argue, if his trial had been held promptly. However, defendants'

contentions are unpersuasive because the adverse consequences which disturb the defendants were the direct results of voluntary actions of the specific defendants. The guilty pleas were voluntarily made and the confession was evidently voluntarily given. It is difficult to perceive how all defendants can assert prejudice from the voluntary acts of their co-defendants.

**25.** Rule 48(b), F.R.Cr.P., provides in pertinent part: "[I]f there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, . . . ."

[of conduct by the prosecutor] than the Sixth Amendment." *United States v. Cartano,* 420 F.2d 362, 363 (C.A.1, 1969), *cert. denied,* 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970). The advisory committee note to Rule 48 indicates that subsection (b) primarily "is a restatement of the inherent power of the court to dismiss a case for want of prosecution." 8A Moore's Federal Practice ¶ 48.01[2]. Furthermore, the rule, by its focus on *unnecessary* delay, envisions that some avoidable delay should be excused. *See United States v. DeLeo,* 422 F.2d 487, 495 (C.A.1, 1970), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970).

As set forth above, most of the delay was unavoidable; it has been approximately eight months since the defendants' arraignments; the defendants, who have been free on bail since before their arraignments, have not been adversely affected by the delay (*see* note 24 *supra*); the delay attributable to the government has not been the result of any improper motive. In conclusion, any delay that has occurred cannot be called unnecessary, and it is obvious that the defendants' opportunities for a fair trial have not been endangered in any way.

Accordingly, defendants' motions to dismiss the prosecution because of unnecessary delay are denied.[26]

An order will be entered in accordance with this opinion.

---

26. An evidentiary hearing on defendants' speedy trial claims was held on January 26, 1976, and Part V of this opinion constitutes the Court's findings of fact and conclusions of law on those issues.